**22 C. C. P. A. (Patents)**

## HAZELTINE v. PROCTOR.

### Patent Appeal No. 3444.

Court of Customs and Patent Appeals.
June 12, 1935.

Pennie, Davis, Marvin & Edmonds, of New York City (Willis H. Taylor, Jr., Raymond J. McElhannon, and Baldwin Guild, all of New York City, of counsel), for appellant.

Harry G. Grover, of New York City (James G. Norton and Abraham S. Greenberg, both of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention to appellee.

The counts in issue originated in appellant's patent, No. 1,755,114, issued April 15, 1930, on an application filed April 3, 1925.

The issue is between appellee's divisional application, No. 51,267, filed August 19, 1925, and appellant's patent.

Appellee's application is a division of an application filed September 4, 1920, which matured into patent No. 1,555,254, September 29, 1925.

The sole issue in the case is whether appellee's parent application, of which his application here involved is a division, discloses the subject-matter of the claims constituting the counts in issue.

The tribunals of the Patent Office concurred in holding that it did, and that therefore appellant was the junior party, and as the date of conception alleged in his preliminary statement was long subsequent to the filing date of appellee's parent application, and as appellant had failed to show cause why judgment on the record should not be entered against him, priority of invention was awarded to appellee.

The counts in issue read:

"1. In a wave signaling system, the combination of an inductance coil, a tuning condenser having means for varying the capacity thereof, said coil and condenser being connected together to comprise an oscillatory circuit, and frequency-adjusting means for said circuit whereby the maximum resonant frequency of said circuit and the rate of change of resonant frequency of said circuit may be adjusted sup-

plementally of said means for varying the capacity of said condenser.

"2. In a wave signaling system, the combination of an inductance coil, a tuning condenser having means for varying the capacity thereof, said coil and condenser being connected together to comprise a tuning circuit, and adjusting means for said circuit whereby the maximum resonant frequency of the circuit and the rate of change of resonant frequency of the circuit may be adjusted supplementally of said means for varying the capacity of said condenser."

In its decision, affirming the decision of the Examiner of Interferences, the Board of Appeals, among other things, said:

"The disclosure relates, as set out in the counts, to a wave signaling system involving the combination of an inductance coil and a condenser having means for varying the capacity thereof, the coil and condenser being connected together to comprise an oscillatory circuit, and frequency adjusting means for the circuit whereby a maximum resonant frequency of the circuit and the rate of change of the resonant frequency of the circuit may be adjusted. Counts 1 and 2 state that the adjusting means for the circuit provide that the maximum resonant frequency of the circuit and the rate of change thereof may be adjusted supplementally of the means for varying the capacity of the condenser. * * *

"In the Hazeltine patent the additional plate 10 constitutes a means for varying by independent adjustment the maximum as well as the minimum capacity of the condenser without affecting the rate of change. The extra plate 11 of the stator group may be adjusted longitudinally of the rotor whereby it provides means for adjusting the maximum capacity of the condenser independently of its minimum capacity.

"The Proctor disclosure which is shown in the drawings has been held by the Examiner to include one screw N as one of the two independent adjusting means for the condenser which determines the maximum resonant frequency of the circuit and the remaining screws N as the other independent adjusting means which determines the rate of change of resonant frequency of said circuit. The Examiner has held that these screws N may be reasonably described as independent and that the adjustment of one end screw N determines the maximum resonant frequency of the circuit and that the other screws N determine the slope of the curve or rate of change of the maximum resonant frequency of the circuit.

"Appellant Hazeltine argues that the claims are unpatentable to Proctor because of new matter included in the amendment to the drawing consisting of the additional Fig. 4 and the descriptive matter thereto inserted in the specification. It is argued in effect by appellant that the counts of the interference require an inductance coil and a variable condenser connected thereto which two elements combined together comprise a tuning circuit and that Proctor has disclosed no such combination involving a single coil and a single condenser. It is argued that the Interference Examiner reached an erroneous conclusion by reason of an incorrect premise to the effect that the only known means of the prior art which meets the Proctor disclosure meets the terms of the count. Appellant argues that it was well known to the prior art that tuned circuit combinations might consist in one or more coils and one or more condensers arranged in any desired combination in which any or all coils and condensers might be variable. It is further argued that Figs. 1-7 of the Proctor patent show tuned circuits consisting of several coils, some fixed and some variable in combination with capacity to form tuned circuits.

"In regard to this argument it may be stated that while it appears to be known to use a plurality of coils and condensers to comprise a tuned circuit, to use one only of each of such elements in a circuit is not of the essence of the patentable improvement here involved and whether the counts included only one coil and one condenser or a plurality of one or both would apparently make no patentable difference in the inventive combination involved here and since both forms are old there would appear to be no advantage in setting up the claims in one form or the other or in drawing from the known art any of these forms to complete the disclosure. It is further noted that the Examiner also stated that it is almost needless to say that the prior art is replete with the showing of a variable condenser and an inductance constituting a tuned circuit.

"Aside from this it may be pointed out that Fig. 7 of the Proctor patent No. 1,-

555,254 shows a coil and variable condenser connected together in such a way that they comprise a tuned circuit and that therefore the present counts do not involve new matter over the disclosure of the patent to Proctor.

"Appellant has also argued that Proctor is estopped to make these counts by reason of prior publication but we do not find anything in the arguments which indicates negligence sufficient to constitute estoppel and certainly the claims were copied within two years of the issuance of the Hazeltine patent.

"As to counts 1 and 2, the means supplemental to the means for varying the capacity of the condenser comprises the various screws N together with the flexible strip i and the chain of mechanisms which may be varied or adjusted to vary the angle of movement of the rotor for a given movement of the knob j. This chain of mechanisms for making the variation is considered to be supplemental to the movement of the rotor broadly which might be accomplished by directly turning or rotating the same and it is our view that the Proctor disclosure is sufficient to support counts 1 and 2."

It is argued by counsel for appellant that there are conflicting decisions by the tribunals of the Patent Office with regard to the right of appellee to make the claims constituting the counts in issue; that, accordingly, the counts should be construed in conformity with appellant's specification; and that, when so construed, appellee's parent application does not disclose the involved invention.

The structures disclosed by the parties are different. It may be observed, however, that the counts in issue are very broad, and, although counsel for appellant argues to the contrary, we find nothing of record to warrant a holding that they are in any sense ambiguous. Accordingly, they should be given the broadest interpretation which their language will reasonably permit. The rule is elementary, and we need cite no authorities in support thereof.

Applying the rule then, as we think should be done in the case at bar, we are clearly of opinion that the language of the claims constituting the counts in issue is sufficiently broad to read on the disclosure contained in appellee's parent application, and that appellee is entitled to the date of that application for conception and reduction to practice of the invention here involved.

The issues have been fully discussed in the decisions of the tribunals of the Patent Office, and we deem it unnecessary to do more than quote, as we have, from the board's decision, with which, so far as the conclusion therein reached is concerned, we are in entire accord.

For the reasons stated, the decision is affirmed.

Affirmed.